UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEANDRAY B.,[1] | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:19-cv-2592-JMS-DLP ) |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

In 2015, Plaintiff Keandray B. applied for supplemental security income ("SSI"), alleging an onset date of January 1, 2007. [Filing No. 5-6 at 2.] His application was denied initially and upon reconsideration. [Filing No. 5-3 at 2-19] Administrative Law Judge Monica LaPolt (the "ALJ") conducted two hearings and issued a decision on August 16, 2018, concluding that Keandray B. was not entitled to benefits. [Filing No. 5-2 at 16-24] The Appeals Council denied review on April 29, 2019. [Filing No. 5-2 at 2-4.] Keandray B. then filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

### I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 416.920(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Simila v. Astrue*, 573 F.3d 503, 512 (7th Cir. 2009) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four

is satisfied, the burden shifts to the [Commissioner] to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe . . . ." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Keandray B. was 22 years old when he applied for SSI, and he alleged that he was disabled due to a variety of ailments, including, as relevant here, seizures.[2] [Filing No. 5-7 at 6.]

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 416.920(a)(4) and ultimately concluded that Keandray B. was not disabled. [Filing No. 5-2 at 16-24.] Specifically, the ALJ found the following:

- At Step One, Keandray B. has not engaged in substantial gainful activity[3] since his application date. [Filing No. 5-2 at 18.]

- At Step Two, Keandray B. has the following severe impairment: "seizures, possibly psychogenic (non-epileptic) in origin." [Filing No. 5-2 at 18-20.]

- At Step Three, Keandray B. does not have an impairment or combination of impairments that meets or medically equals a listing. [Filing No. 5-2 at 20.]

- After Step Three but before Step Four, Keandray B. has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), "except no climbing ladders, ropes or scaffolds; no work at unprotected heights; no work with unmanned, moving, dangerous machinery; and no commercial driving." [Filing No. 5-2 at 20-23.]

- At Step Four, Keandray B. has no past relevant work. [Filing No. 5-2 at 23.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Keandray B.'s age, education, work experience, and RFC, there are jobs that exist in the national economy that he can perform, such as dining room attendant, hand packager, and patient transporter. [Filing No. 5-2 at 23-24.]

### III.
### DISCUSSION

Keandray B. challenges the ALJ's decision on three grounds, arguing that: (1) the ALJ erred at Step Three by failing to adequately explain why Listing 11.02 was not met, failing to consider whether Listing 12.07 was met, and failing to seek the guidance of a medical expert; (2) the ALJ erred in failing to apply Social Security Ruling 16-3p in assessing Keandray B.'s subjective description of his symptoms; and (3) the ALJ did not adequately explain her RFC

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a), (b).

4

determination. [Filing No. 7 at 4.] Because the Court's resolution of the first argument is dispositive, only that issue will be addressed.

Keandray B. argues that the ALJ's analysis of whether he meets or equals the requirements of Listing 11.02, which addresses epilepsy, is conclusory and inadequate, and the ALJ completely failed to consider Listing 12.07 for somatic disorders. [Filing No. 7 at 15-18.] Keandray B. asserts that the lack of a meaningful analysis on the listings issue requires remand. [Filing No. 7 at 16.] In addition, Keandray B. asserts that the ALJ should have consulted a medical expert in determining whether he meets or equals any listing. [Filing No. 7 at 19-22.]

The Commissioner responds that the ALJ did not err at Step Three and substantial evidence supports the ALJ's listings analysis. [Filing No. 14 at 7-14.] Specifically, the Commissioner argues that the ALJ adequately explained why Keandray B. did not meet listing 11.02 for epilepsy, even though her relevant discussion appeared in other sections of the decision. [Filing No. 14 at 8-9.] The Commissioner also argues that Keandray B. has not demonstrated any error with regard to Listing 12.07 because he has not pointed to medical evidence not considered by the ALJ that would show that he met or equaled that listing, and the ALJ is not required to discuss listings where there is no evidence that they apply. [Filing No. 14 at 9-13.] Finally, the Commissioner asserts that the ALJ was not required to consult a medical expert in deciding whether listings are met or equaled. [Filing No. 14 at 13-14.]

In reply, Keandray B. does not specifically address this issue but reiterates that remand is required because the ALJ committed legal error, and the Commissioner cannot justify the ALJ's decision with post hoc rationalizations. [Filing No. 15 at 1-2.]

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than [a] perfunctory analysis of the listing."

5

*Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citations omitted). The listings set forth the criteria for qualifying impairments. *Id.* (citing 20 C.F.R. § 404.1525(a)). "A claimant may also satisfy a listing by showing that his impairment is accompanied by symptoms that are equal in severity to those described in the Listing." *Minnick*, 775 F.3d at 935. "A finding of medical equivalence requires an expert's opinion on the issue." *Id.*

Listing 11.02 covers epilepsy. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.02. The material preceding this Listing states that "psychogenic nonepileptic seizures and pseudoseizures are not epileptic seizures for the purpose of 11.02. We evaluate psychogenic seizures and pseudoseizures under the mental disorders body system, 12.00." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.00(H). In order to meet the epilepsy listing, the claimant must satisfy one of four criteria based on the type, frequency, and limitations caused by his or her seizures. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.02(A)-(D). Notably, each of the four criteria require that the seizures occur "despite adherence to prescribed treatment." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.02(A)-(D).

Listing 12.07 covers somatic symptom and related disorders, which "are characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00(B)(6). To meet this Listing, a claimant must show:

   A. Medical documentation of one or more of the following:
      1. Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;
      2. One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or

3. Preoccupation with having or acquiring a serious illness without significant symptoms present.
AND
B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
1. Understand, remember, or apply information
2. Interact with others
3. Concentrate, persist, or maintain pace
4. Adapt or manage oneself

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.07 (internal cross-references omitted).

Here, as Keandray B. points out, the ALJ's discussion at Step Three is only one paragraph long, only explicitly mentions Listing 11.02, and simply concludes that the Listing is not met or medically equaled because the evidence did not demonstrate that Keandray B.'s seizures were epileptic in nature or that he has been consistently compliant with prescribed treatment. [Filing No. 5-2 at 20.] The Seventh Circuit has warned that short, conclusory analyses at Step Three are insufficient. *See Minnick*, 775 F.3d at 935; *Barnett*, 381 F.3d at 670. However, the Court has also been clear that when a more detailed discussion appears elsewhere in the decision, that discussion can be used to evaluate the ALJ's Step Three determination. *E.g.*, *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (concluding that conclusory discussion at Step Three was not reversible error where "the ALJ provided the discussion of [the claimant's] severe and non-severe impairments, the objective medical evidence, and her credibility directly after step 3 when he determined her RFC" because "[t]his discussion provides the necessary detail to review the ALJ's step 3 determination in a meaningful way").

Substantial evidence discussed in the context of the RFC determination supports the ALJ's findings that Keandray B.'s seizures are not epileptic in nature and that he has not been consistently compliant with his seizure treatment. Specifically, in support of the conclusion that Keandray B.'s seizures are not epileptic, the ALJ cited various medical records demonstrating that EEG results

7

were normal and did not indicate epileptiform activity, as well as records from three doctors indicating that the seizures were believed to be psychogenic in origin. [Filing No. 5-2 at 21.] In support of the conclusion that Keandray B. was not always compliant with his treatment, the ALJ referenced medical records showing that Keandray B. had reported not taking his medication, failed to attend follow-up appointments with his neurologist, and left hospital visits against medical advice.[4] [Filing No. 5-2 at 21-22.] Accordingly, the Step Three determination that Keandray B.'s impairments do not meet or medically equal Listing 11.02 is supported by substantial evidence.

However, the ALJ should have considered the seizures under Listing 12.07. Although the record does not definitively establish whether Keandray B.'s seizures are epileptic or psychogenic in nature, the ALJ concluded that there was not enough evidence to demonstrate that they were epileptic, but also failed to consider any Section 12 listing, which would have been required if the seizures were psychogenic. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.00(H). The ALJ cannot have it both ways. Indeed, the ALJ referenced the fact that Keandray B.'s seizures were likely non-epileptic several times in the decision, including in evaluating his credibility and discounting his neurologist's opinion as to how many days per month Keandray B. would be likely

---

[4] To the extent that the ALJ intended to rely on the lack of compliance with prescribed treatment as a basis to disbelieve Keandray B.'s testimony or to deny him benefits completely, the ALJ would have needed to conduct further inquiry to conclude that there was no good reason for failing to comply, and that complete compliance would have restored Keandray B.'s ability to work. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014), *as amended* (Aug. 20, 2014) (explaining that an ALJ may deem the claimant's statements less credible if the claimant is not following prescribed treatment only if there are no "good reasons" for failure to follow the treatment plan, so "an ALJ may need to question the individual at the administrative proceeding to determine whether there are good reasons" for the noncompliance); *Shramek v. Apfel*, 226 F.3d 809, 812 (7th Cir. 2000) (noting that, before benefits may be denied on the basis of noncompliance with treatment, the ALJ must find that compliance would restore the claimant's ability to work). Such inquiry and findings are absent here, so the noncompliance is relevant only to determine whether the compliance requirement of Listing 11.02 is satisfied.

8

to miss work. Relying on the non-epileptic nature of the seizures to deny benefits while completely ignoring the applicable listing concerning non-epileptic seizures is circular, constitutes legal error, and requires remand. *See Minnick*, 775 F.3d at 935-36; *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004) ("[A]n administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws, even if those flaws might be dissipated by a fuller and more exact engagement with the facts." (citations omitted)); *Elbert v. Barnhart*, 335 F. Supp. 2d 892, 896 (E.D. Wis. 2004) (explaining that the ALJ's failure to comply with the Commissioner's rules and regulations constitutes a legal error that requires remand, regardless of the volume of evidence that would support the ALJ's factual findings). The Commissioner's argument that the ALJ viewed the record and concluded—without explaining— that Listing 12.07 should be disregarded because there was no evidence that it should apply is complete speculation. Indeed, the evidence of psychogenic seizures was sufficient to compel consideration of that Listing.

The Court acknowledges that: (1) the record does not contain substantial evidence concerning Keandray B.'s mental health history that could be related to the psychogenic seizures; and (2) Keandray B. failed to appear for his scheduled consultative examinations at both the initial and reconsideration levels. The burden is on Keandray B. to produce the necessary evidence of disability and participate in the examinations necessary to inform the disability inquiry. *See e.g.*, *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) ("The claimant bears the burden of producing medical evidence that supports her claims of disability."). However, the ALJ did not specifically point to a lack of evidence to support the conclusion that Listing 12.07 was not met or equaled, as she did not discuss that Listing at all. The Commissioner's argument that Keandray B. would not have met Listing 12.07, had it been considered, is speculative and would require the

9

Court to engage in an analysis that the ALJ did not. *See e.g.*, *Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence.") (citations omitted).

To be clear, this is not a situation in which the ALJ erred in failing to order a consultative examination, and the Court does not fault the ALJ for the lack of evidence resulting from Keandray B.'s failure to attend the scheduled examinations. However, given that remand is required in light of the error concerning the Step Three analysis, and in light of the lack of evidence concerning the limiting effects of Keandray B.'s seizures and the ALJ's failure to inquire into the reasoning behind Keandray B.'s failure to attend his previous examinations, the interests of justice would be served by conducting a consultative examination on remand. *See e.g.*, *Elbert*, 335 F. Supp. 2d at 905 (explaining that the ALJ has a duty to ensure that the record is fully and fairly developed, which may require the ALJ to "consult medical advisors or order a consultative medical or psychological examination") (citations omitted).

The Court cautions Keandray B. that failure to attend or cooperate during the consultative examination without good reason may result in the denial of benefits. *See* 20 C.F.R. § 416.918(a) ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability or blindness, we may find that you are not disabled or blind."); *Davenport v. Berryhill*, 721 F. App'x 524, 527 (7th Cir. 2018) ("[The claimant's] refusal to submit to a medical examination was, as the ALJ noted, reason enough for him to deny her applications.") (citations omitted). In *Pearce v. Sullivan*, 871 F.2d 61 (7th Cir. 1989), the Seventh Circuit reviewed the denial of benefits where the ALJ found that the claimant refused to cooperate during

a consultative examination, resulting in a lack of medical evidence of a pulmonary impairment that, if sufficiently severe, would have rendered the claimant disabled. Specifically, the claimant had reported to the examination but failed to fill out required paperwork, argued with the medical staff, would not remove his shirt to allow testing, and "made no effort whatsoever" when asked to blow into an apparatus designed to measure his breathing. *Id*. at 63. The Court affirmed, noting that the claimant "ha[d] himself to blame for being denied social security disability benefits" because, "as a result of [his] refusal to cooperate, he failed to obtain the test results that he needed to establish his disability." *Id*. at 64.

At this juncture, the Court cannot conclude that Keandray B.'s previous failure to attend the consultative examinations was a sufficient reason to deny him benefits because the ALJ never inquired into whether the failure to attend was justified by a good reason. *See* 20 C.F.R. § 416.918(a). In addition, in contrast to *Pearce*, the Court has no indication that the lack of a consultative examination was the result of obdurate or intentionally uncooperative behavior, and the lack of a consultative examination did not leave the record devoid of evidence of Keandray B.'s condition. Unlike the claimant in *Pearce*—whose lung condition could not be substantiated without the results of pulmonary tests—the existence of Keandray B.'s seizures is well-documented in the medical evidence of record.[5] Accordingly, this case must be re-evaluated with the benefit of information gathered through a consultative psychological examination related to Keandray B.'s seizures.

---

[5] The Court also notes that the reports that mention Keandray B.'s failure to attend his consultative examinations reference only Listing 12.04 for affective disorders and Listing 14.08 for HIV, and did not mention any listing that would appear to cover Keandray B.'s seizures, despite the fact that "seizures" and "epilepsy" were claimed as impairments. [Filing No. 5-3 at 2; Filing No. 5-3 at 6-7; Filing No. 5-3 at 10; Filing No. 5-3 at 17.] Accordingly, it is unclear whether these examinations would have shed light on the issue of Keandray B.'s seizures, even if he had attended.

11

# IV.
## CONCLUSION

For the foregoing reasons, the Court **VACATES** the ALJ's decision denying Keandray B. benefits and **REMANDS** this matter pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this decision. On remand, the ALJ shall obtain a psychological consultation and re-evaluate Keandray B.'s seizure impairment, and all the evidence related thereto, as it pertains to the applicable listing for psychogenic seizures.

Date: 2/21/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**